## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Elwyn Lee Smith,                                          **Civil No. 15-4286 (JNE/SER)**

                          Plaintiff,

v.                                                        **REPORT & RECOMMENDATION**

M.P. Conway, L.L. Paule,
Cynthia Bauerly, Janis Macort,
John Doe, and Mary Rowe,

                          Defendants.

---

Elwyn Lee Smith, East Bethel, Minnesota, *pro se*.

Derek Hilding, Esq., Minnesota Attorney General's Office, St. Paul, Minnesota, for Defendant Cynthia Bauerly.

Lee A. Lastovich, Esq., Jackson Lewis P.C., Minneapolis, Minnesota, for Defendant Janis Macort.

---

STEVEN E. RAU, United States Magistrate Judge

This matter comes before the Court on Defendant Cynthia Bauerly's ("Bauerly") Motion to Dismiss [Doc. No. 7] and Defendant Janis Macort's ("Macort") Motion to Dismiss [Doc. No. 33] (collectively, the "Motions to Dismiss").[1] Also before the Court are Plaintiff Elwyn Lee Smith's ("Smith") Motion and Order for Default Judgment and Replevin [Doc. No. 20], Private Letter Rogatory and Motion-Order [Doc. No. 30], Motion and Memorandum of Law in Support of Default Judgment and Order Relief [Doc. No. 39], and Motion and Support for Default

---

[1]     Macort's last name is spelled "Marcort" in the Complaint, but several filings demonstrate that "Marcort" is an incorrect spelling. (Macort's Mem. of Law. in Supp. of Mot. to Dismiss, "Macort's Mem. in Supp.") [Doc. No. 35 at 1 n.1]; (Letter Dated Oct. 30, 2015, Ex. B, Attached to Compl.) [Doc. No. 1-2 at 5]. The Court uses the correct spelling throughout this Report and Recommendation.

Judgment and Replevin [Doc. No. 48] (collectively, "Smith's Motions"). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. (Order of Reference) [Doc. No. 32]. For the reasons stated below, the Court recommends that the Motions to Dismiss be granted, that Smith's Motions be denied, and that this action be dismissed with prejudice.

## I.   BACKGROUND

### A.   Factual Background

This case concerns the withholding of federal and state taxes and tax levies against Smith's wages. Smith is a resident of East Bethel, Minnesota. (Compl.) [Doc. No. 1]. In this action, Smith sues M.P. Conway ("Conway") and L.L. Paule ("Paule") "personally," both of whom he alleges are Internal Revenue Service ("IRS") employees. *See* (*id.* at 2, 11). Smith also sues Bauerly "personally" and Macort "in her personal capacity." (*Id.* at 2, 8, 11). Bauerly is an employee of the Minnesota Department of Revenue ("MDR"), and Macort works in the payroll department at Iron Mountain Information Management ("Iron Mountain"). *See* (*id.*). Smith is also an Iron Mountain employee. *See* (*id.* at 6). "John Doe" and "Mary Rowe" are also listed as defendants in the Complaint's caption. (*Id.* at 1).

Smith alleges that Conway, Paule, Bauerly, and Macort "intend to and have withheld and levied [his] wages" improperly.[2] (*Id.* at 4). Smith suggests that he is not subject to federal or state income tax laws because he is a "man who labors in Minnesota, an alien, non-resident" and because he is "not engaged in the conduct of a trade or business within the United States." *See* (*id.*); *see also* (*id.* at 9, 10) (asserting that "Smith has seen no material facts or evidence other

---

[2]    The Court notes that here and elsewhere in the Complaint, Smith makes references to certain defendants and "others." It is not clear to the Court whether Smith intends by these references to refer to defendants John Doe and Mary Rowe or to other unknown actors.

than the 'income tax' is an excise tax on the manufacture and sale of specific corporate commodities" and that he "has seen no material facts . . . that he is engaged in the conduct of a trade or business within the United States [Washington, D.C.]" (brackets in original)).[3] He further alleges that Conway, Paule, Bauerly, and Macort "are responsible for sending harassing letters, frivolous claims, threats of criminal action, imprisonment," and "unverified claims through the United States Postal Service." (*Id.* at 4). Smith suggest that this constitutes "mail

---

[3]     Smith relatedly asserts that he "has never knowingly agreed to waive his citizenship status from one of the several states of the Union (Nebraska) to the United States" and that he "gives no entity the right to administrate his property" or "his name." (Compl. at 12). These allegations, as well as other filings in this case, demonstrate that Smith identifies with the Sovereign Citizens movement.

> According to the FBI, the "Sovereign Citizens" movement is based on a theory that the "United States government [USG] is bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back U.S. currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral. Sovereign citizens exploit this belief by filing fraudulent financial documents charging their debt to the Treasury Department." *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 750 (7th Cir. 2013) (quoting Federal Bureau of Investigation, "Sovereign Citizens: An Introduction for Law Enforcement" 3 (Nov. 2010), http://info.public intelligence.net/FBISovereign Citizens.pdf). *See also Cooper v. United States*, 104 Fed. Cl. 306, 313–14 (2012) (explaining that "an individual who identifies with the Sovereign Citizen Movement considers himself to be his own sovereign, not a United States citizen, and therefore 'believe[s] that [he is] not subject to government authority.' *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011). Members of this movement think that [t]he federal government . . . has tricked the populace into becoming U.S. citizens by entering into 'contracts' embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (*i.e.*, the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.") (citation omitted). *See also Sochia v. Federal–Republic's Cent. Gov't*, Civ. No. SA–06–CA–1006–XR, 2006 WL 3372509, at *5 (W.D. Tex. Nov. 20, 2006) (describing plaintiff's "sovereign citizen" theories as "frivolous" and "rejected by every federal court that has considered them" and collecting cases).

*Sellors v. Obama*, No. 13-CV-2484 (SRN/JSM), 2014 WL 1607747, at *4 n.1 (D. Minn. Apr. 15, 2014) (Mayeron, Mag. J., as adopted by Nelson, J.) (alterations in original).

fraud" and states that the "IRS and MDR have been Noticed under Title 15, Chapter 41, § 1601, *et seq*. to cease and desist all contact."[4] (*Id.*).

   The basis for Smith's complaints is offered through several more specific allegations as to Conway, Paule, Bauerly, and Macort. First, he alleges that Conway contacted the payroll department at Iron Mountain "regarding [his] W-4 status" by a letter dated December 29, 2014. (*Id.* at 5). When Smith received the letter he "Refused it for Cause, without dishonor."[5] (*Id.*); *see also* (Letter Dated Dec. 29, 2014, Ex. F, Attached to Compl.) [Doc. No. 1-2 at 15–16]. Conway "or another" individual at the IRS instructed Iron Mountain to change Smith's "W-4 withholding" status to "Single/Zero status," which Smith alleges resulted in "harm and lack of remedy for loss of wages." (Compl. at 5). Smith asserts that the change to his withholding status was improper and resulted in the alleged harm because the IRS's "1040 form does NOT have a

---

[4]    Title 15, Chapter 41 of the United States Code addresses consumer credit protection. Smith cites to the entire chapter here, but subsequent references in the Complaint demonstrate to the Court that Smith seeks to invoke a provision of the Fair Debt Collection Practices Act ("FDCPA"), which is contained in Subchapter V of Title 15, Chapter 41. Smith asserts that consistent with the FDCPA, the IRS and MDR have been informed in writing "not to contact [him] regarding alleged debts, harassment, levies, and telephone calls." (Compl. at 4); *see* 15 U.S.C. § 1692c(c) ("If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—(1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy."). The term "debt collector" does not include "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." 15 U.S.C. § 1692a.
[5]    Smith appears to believe that this type of language has legal significance. Indeed, "[t]here exists a segment of the community which believes th[is] phrase is a talisman and that those who use it will be immunized from all manner of legal process." *Bisciglia v. Lee*, 370 F. Supp. 2d 874, 875 n.1 (D. Minn. 2005) (Doty, J., adopting Nelson, Mag. J.). This "belief is erroneous." *Id.* (noting that plaintiffs "emblazoned the following nonsense" on the magistrate judge's report and recommendation: "OBJECTION 'Refused for Cause Without Dishonor and, Without Recourse to Me.'").

valid OMB control number—thus, there is no duty to file" the form. (*Id.*). According to Smith, the IRS and MDR have "not disclosed the correct form to file in lieu of Form 1040." (*Id.* at 5, 11); *see also* (*id.* at 9).

As to Paule, Smith alleges that Paule "claims over $21,747 in unverified taxes" by "Notice of Levy (Form 668w(c)), without 'the Secretary'[ of the Treasury's] signature, without in personam and subject matter jurisdiction, without due process of law, a court order, [and] without [Smith's] permission/consent to contract."[6] (*Id.* at 5); *see also* (Notice of Levy on Wages, Salary, and Other Income, Ex. C, Attached to Compl.) [Doc. No. 1-2 at 7] (describing the total amount of Smith's unpaid taxes for 2004, 2005, and 2006). Smith alleges that the IRS levy was initiated in November 2015 and was "executed by" Macort by her "letter of intent to levy" dated October 30, 2015. (Compl. at 5); *see also* (Letter Dated Oct. 30, 2015, Ex. B, Attached to Compl.) [Doc. No. 1-2 at 5]. Smith alleges that he received the IRS's "Notice of Levy" through communications with Iron Mountain, but that the "original IRS certified mailings were timely refused for cause, without dishonor, without recourse, without prejudice . . . signed and dated." (Compl. at 5); *see* (*id.*) (stating that Smith "Refused for Cause" an "IRS certified document" in August 2015); *see also* (Letter Dated Nov. 10, 2015, Ex. B, Attached to Compl.) [Doc. No. 1-2 at 6] (letter from Smith to Macort regarding IRS notice of levy); (Ex. K, Attached to Compl.) [Doc. No. 1-2 at 33].

---

[6]    *See also* (Compl. at 9) (alleging that Smith believes  no "notice" or "court judgment" "exists"); *see also* (*id.* at 10) (alleging that Smith has no "facts or evidence" that he has given the IRS, MDR, or Iron Mountain personnel "permission to withhold, levy or garnish his private property," that Smith has no "facts or evidence" that the IRS or MDR "has a court judgment against him or that due process of law has been followed or that he has been noticed of the nature and cause of the tax," and that Smith does not "consent to contract with" the IRS, MDR, or Iron Mountain "for [the] withholding or levy of his property").

Next, Smith alleges that the MDR has levied his wages "in excess of $7,400" and that this occurred "without due process of law, without jurisdiction, and without [his] consent, presumably by . . . Bauerly." (Compl. at 6). He further asserts that the MDR's "Demand for Payment and Intent to Levy Wages was timely Refused for Cause" on November 24, 2015, and that "several prior MDR correspondences" were "refused for cause and returned unopened." (*Id.*); *see also* (Ex. L, Attached to Compl.) [Doc. No. 1-2 at 34–35]. Smith alleges that the "MDR levy was executed without in personam or subject matter jurisdiction, without due process of law, a court order, under color of law, acting outside [Bauerly's] agency authority." (Compl. at 6). He further alleges that Macort sent him a "letter of intent to levy" regarding the MDR levy, which he "timely refused for cause, without dishonor." (*Id.*).

As to Macort, Smith refers to her actions in connection with the IRS levy for $21,747 and the changing of Smith's federal withholding status in December 2014. (*Id.*). Smith states that this was "in breach of [his] contract with Iron Mountain and without [his] power of attorney." (*Id.*); *see also* (*id.* at 10–11) (asserting that he has "contracted with" Iron Mountain regarding his "status as 'tax exempt' by his signed W-4 Form and 4598E—no federal or state withholding," that a change of his W-4 status without his consent is a breach of contract, and that he has not executed a "power of attorney" allowing anyone to "change his W-4 status or grant a levy"). Smith also "[p]resum[es]" that Macort "executed" the $7,400 MDR levy. (*Id.* at 6). He asserts that Macort's actions have harmed him and "claim[s] replevin of lost wages due to federal and state withholding and MDR levy." (*Id.*).[7]

---

[7]     Smith's Complaint includes an "Additional Facts" section, in which he repeats many of the assertions made elsewhere in the Complaint and makes various assertions regarding his past interactions (or lack thereof) with the IRS. *See* (*id.* at 9–12) (stating that Smith "has not filed 1040 tax forms since April 1978").

In sum, the Court understands Smith's grievances to be that Conway and Paule are unlawfully withholding federal taxes and levying against his wages to pay federal income tax, that Bauerly is unlawfully levying his wages to pay state income tax, and that Macort has unlawfully allowed and/or implemented the withholding and levying of his wages. *See generally* (Compl.).

According to Smith, this Court has jurisdiction because his Complaint presents federal questions. Smith lists the following as the legal bases for his claims:

> Federal Bill of Rights and Article 1, Section 10 of the Federal Constitution, titles of nobility, involuntary servitude, contract law; Savings to Suitors, and specifically, the 5th Amendment: no one shall deprive another of "life, liberty or property" without due process of law . . . and equal protection of the laws . . . the Right to a Remedy in Law, Right to Private Property-not taken for public use . . . ; a Bill of Particulars - the right to know the nature and cause of the IRS/MDR authority for the tax and its jurisdiction . . . IRS and MDR people's proof of in personam and subject matter jurisdiction over the people-not its corporate jurisdictions; one's freedom of conscience/belief; one's right to contract and terminate contracts; the right to terminate/sue public trustees acting beyond their authority, under color of law, outside the best interests of the beneficiaries (the people); the right to petition the government for redress; the right of the people to be secure in their persons, papers and effects . . . a claim needs to be certified by Oath and notarized signature by one of the people; the Writ/Right of Replevin; no fact tried in a federal court of record shall be re-examined; no cruel or unusual punishments; Rights not delegated to governments are retained by the people, with certain God-given unalienable rights—Declaration of Independence, Minnesota's Constitution, Article 1, Rights to private property, remedy in law, right to due process, right to work.[8]

(*Id.* at 3). In addition, Smith makes the following requests for relief: (1) "Order for Injunctive Relief from L.L. Paule's IRS Notice of Levy"; (2) "Order for [Macort] to cease and desist all federal and state tax withholding per . . . Smith's W-4 contract with Iron Mountain"; (3) "Order for [Macort] . . . to cease and desist from levying . . . Smith's wages for all unverified claims of"

---

[8]   Smith also filed a Memorandum of Law as an exhibit to his Complaint. (Mem. of Law, Ex. A, Attached to Compl., "Smith Mem. of Law") [Doc. No. 1-2 at 2–4]. In this memorandum, Smith quotes extensively from various sources of law, but does not make any factual allegations. *See generally* (*id.*).

the IRS and MDR; (4) "Order for [Macort] to audit the payroll accounts of . . . Smith to certify and return all the wages unlawfully withheld, levied and garnished for the" IRS and MDR; and (5) "Order for M.P. Conway, L.L. Paule and the [IRS] and ACS, and Cynthia Bauerly and [MDR], to cease and desist all debt collection activities" as to Smith "per Title 15, Chapter 41, Section 1601, *et seq.*" (*Id.* at 7); *see also* (*id.* at 5) (stating that Smith seeks "injunctive relief" in the form of stopping the IRS's levy of his wages).

### B.    Procedural Background

Smith filed his Complaint on December 3, 2015. Bauerly filed her Motion to Dismiss on February 2, 2016, and Macort filed her Motion to Dismiss on March 10, 2016.

Smith filed his Motion and Order for Default Judgment and Replevin on February 18, 2016, and filed his Private Letter Rogatory and Motion-Order on March 4, 2016. On March 14, 2016, Smith filed the Motion and Memorandum of Law in Support of Default Judgment and Order Relief and applied for entry of default judgment against Bauerly under Federal Rule of Civil Procedure 55. (Letter to Clerk of Court) [Doc. No. 40]. On April 29, 2016, Smith filed his Motion and Support for Default Judgment and Replevin and applied for entry of default against Macort. (Letter to Clerk of Court) [Doc. No. 53]. The Clerk of Court denied both of Smith's applications for entry of default because neither Bauerly nor Macort "failed to plead or otherwise defend as required by Federal Rule of Civil Procedure 55(a)." (Letter from Clerk of Court) [Doc. No. 57]; (Letter from Clerk of Court) [Doc. No. 58].

Bauerly and Macort separately filed responses in opposition to some of Smith's Motions. *See* (Mem. of Law in Opp'n to Pl.'s Mot. & Order for Default J. & Replevin) [Doc. No. 24]; (Macort's Mem. of Law in Opp'n to Private Letter Rogatory & Motion-Order) [Doc. No. 43]; (Mem. of Law in Opp'n to Pl.'s Mot. for Default J. & Replevin) [Doc. No. 56]. In addition to his

motions and supportive memoranda, Smith filed various "notices" and other documents with the Court, but did not file any particular response to the Motions to Dismiss. *See, e.g.*, (Notice of Common Law Venue/Claim) [Doc. No. 41]; (Letter from Smith to OneSource Virtual) [Doc. No. 47]; (Various Letters) [Doc. No. 62].[9]

After all dispositive and non-dispositive motions were referred to the undersigned, the Court held a hearing on the Motions to Dismiss and Smith's Motions. (Order of Reference); (Minute Entry Dated May 11, 2016) [Doc. No. 59]. The Motions to Dismiss and Smith's Motions are now ripe for decision.

## II.    DISCUSSION

### A.    Motions to Dismiss

#### 1.    Legal Standard

A defendant may move to dismiss a complaint on the ground that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Whether a court has subject matter jurisdiction to entertain a plaintiff's claims is "a threshold question." *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005).

A defendant may also move to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). "A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Braden v. Wal-*

---

[9]    Many of Smith's filings are related to tax collection issues, but many are directed to individuals or entities that are not parties to this case.

*Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (omission in original) (quoting *Iqbal*, 556 U.S. at 678).

A court accepts the facts alleged in the complaint as true, and grants "reasonable inferences in favor of the nonmoving party." *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012). Legal conclusions "must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pro se pleadings are construed liberally, however, they may not be "merely conclusory." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). A pro se complaint "must allege facts, which if true, state a claim as a matter of law." *Id.*

### 2.      Analysis

#### a.      Bauerly's Motion to Dismiss

Bauerly moves to dismiss Smith's claims against her for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. (Mem. of Law in Supp. of Bauerly's Mot. to Dismiss, "Bauerly's Mem. in Supp.") [Doc. No. 9 at 1]. Bauerly contends that "because [Smith] requests only injunctive relief," his claims against her are barred by the Tax Injunction Act ("TIA") and "Minnesota law." (*Id.* at 1, 5–9). In addition, Bauerly contends that Smith failed to "allege specific facts . . . that would indicate she has taken any unlawful actions," and instead relies on vague references to "inapplicable legal doctrines or frivolous legal arguments." (*Id.* at 1, 10–17).

The Court concludes that pursuant to the TIA, this Court lacks subject matter jurisdiction over Smith's claims against Bauerly. The TIA, 28 U.S.C. § 1341, provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The law "forbids federal courts from exercising jurisdiction over certain kinds of claims involving state taxation," and the "prohibition extends to declaratory judgment actions as well as to suits for injunctive relief." *Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir. 1991). The TIA was "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981).

As to Bauerly, Smith's only claim for relief is his request for an order that "Bauerly . . . cease and desist all debt collection activities."[10] (Compl. at 7). That is, Smith seeks an injunction preventing Bauerly from levying his wages for the purposes of collecting state taxes. *See* (*id.* at 6–7). Such injunctive relief would necessarily "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law." § 1341; *see also Bisciglia*, 370 F. Supp. 2d at 878 (applying TIA to bar plaintiffs' claims arising from alleged "unlawful income tax collection practices"); *Kraemer v. Minn. Dep't of Revenue*, No. Civ. 02-649 (MJD/JGL), 2002 WL 31116645, at *2, 4 (D. Minn. Sept. 24, 2002) (Davis, J.) (concluding that the TIA barred plaintiffs' action raising federal law and state law claims and seeking declaratory relief as to state taxing authority).

---

[10]     Smith also refers to the IRS and MDR in articulating this request for relief, but neither is a party to this litigation. Further, Smith refers to "ACS" in articulating this request for relief, but it is unclear who or what "ACS" is.

Thus, as long as the remedies provided to Smith under Minnesota state law are "plain, speedy and efficient," this Court lacks jurisdiction over Smith's claims against Bauerly. *See* § 1341. "The adequacy of the state remedy is measured according to procedural rather than substantive criteria." *Kraemer*, 2002 WL 31116645, at *4 (citing *Rosewell*, 450 U.S. at 512). "As long as the taxpayer's federal rights receive full consideration, the remedy is adequate." *Id.* As detailed in Bauerly's Memorandum in Support, Minnesota law satisfies the TIA's "plain, speedy, and efficient" standard. *See* (Bauerly's Mem. in Supp. at 6–8); *see also Bisciglia*, 370 F. Supp. 2d at 878–79 (concluding that Minnesota's "state court remedies satisfy" the TIA); *Kraemer*, 2002 WL 31116645, at *4 (noting that plaintiffs had plain, speedy and efficient remedy in Minnesota state court, "as well as administrative alternatives," to challenge the lawfulness of the way Minnesota determined their tax liability and the lawfulness of the states' "attempts to collect those taxes").

> In the state judicial system, the Minnesota Tax Court has jurisdiction over appeals from any order of the Commissioner. Minn. Stat. § 271.01, subd. 5 (2004). An order of the Commissioner assessing income tax liability is directly appealable to the Tax Court under Minn. Stat. § 271.06 (2004). The Tax Court also has jurisdiction to determine constitutional issues, provided the Tax Court first transfers such issues to a state district court, which may either decide the issues or refer them back to the Tax Court. *Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 199 (Minn. 2000). Tax Court decisions receive the same finality and deference as those of the state district courts. *In re McCannel*, 301 N.W.2d 910, 919 (Minn. 1980). A party may appeal a decision of the Tax Court directly to the Minnesota Supreme Court. Minn. Stat. § 271.10, subd. 1 (2004).

*Bisciglia*, 370 F. Supp. 2d at 878–79.

Smith seeks injunctive relief from Bauerly that would "enjoin, suspend or restrain the assessment, levy or collection of [a] tax under State law," and Smith's remedies under state law

are plain, speedy and efficient.[11] This Court lacks subject matter jurisdiction as to Smith's claims

against Bauerly, and the claims against her must be dismissed.[12] *See* § 1341; *Bisciglia*, 370 F.

Supp. 2d at 878; *Kraemer*, 2002 WL 31116645, at *2, 4; *see also Burris*, 941 F.2d at 720. The

Court therefore recommends that Bauerly's Motion to Dismiss be granted.

### b.  Macort's Motion to Dismiss

Macort argues that Smith's claims against her must be dismissed for several reasons.

Specifically, Macort argues that she cannot be individually liable to Smith for withholding

Smith's federal and state taxes because she "could only have withheld [Smith's] taxes in the

normal cour[se] and scope of her employment with Iron Mountain." (Macort's Mem. in Supp. at

4–5). Macort also argues that under federal law, an employee cannot sue an "employer or its

agents based on taxes withheld by an employer from the employee's pay when the employer has

been directed by the IRS to withhold the taxes." (*Id.* at 5) (citing 26 U.S.C. § 3403). Third,

Macort argues that under federal and state law, she cannot be liable to Smith based on her actions

in compliance with a federal or state tax levy. (*Id.* at 6–8). Macort next argues that Smith fails to

plead a claim against her under 42 U.S.C. § 1983. (*Id.* at 9). She further argues that to the extent

Smith raises claims under the Minnesota constitution, such claims should be dismissed because

---

[11]     That Smith refuses to open mailings from the MDR and the possibility that he may now
be precluded from pursuing certain state remedies does not undermine the conclusion that
Minnesota's remedy is plain, speedy, and efficient. "[A] taxpayer's failure to take advantage of a
remedy does not render it insufficient. The relevant question is whether the remedy was available
originally." *Burris*, 941 F.2d at 721 n.4 (citation omitted).

[12]     Because the Court does not have subject matter jurisdiction over Smith's claims against
Bauerly, it does not address Bauerly's additional arguments. *See* (Bauerly's Mem. in Supp. at 8–
18).

    The Court notes that Smith appears to desire to amend his Complaint to also seek
replevin of his wages from Bauerly. *See* (Mot. & Mem. of Law in Supp. of Default J. & Order
Relief at 5–6). In light of the Court's analysis in this Report and Recommendation, any attempt
to add this claim as to Bauerly would be futile.

Minnesota law does not provide a private right of action for violations of the Minnesota Constitution. (*Id.* at 10).

As an initial matter, the Court notes that Smith also seeks, in large part, injunctive relief from Macort. Specifically, Smith seeks an order that Macort "cease and desist all federal and state tax withholding" from Smith's wages earned at Iron Mountain and an order that Macort "cease and desist from levying . . . Smith's wages for" the IRS and MDR. (Compl. at 6–7). To the extent Smith seeks this injunctive relief as to Macort, the Court lacks subject matter jurisdiction over his claims under the TIA and the Anti-Injunction Act ("AIA").

As noted above, the TIA bars federal district courts from enjoining, suspending, or restraining "the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Similarly, the AIA, 26 U.S.C. § 7421, bars certain suits related to the collection of taxes by the federal government. The law provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." "As the Supreme Court has recognized, the statute's language 'could scarcely be more explicit,' and it reflects the Act's principal purpose of protecting 'the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference . . . .'" *Int'l Lotto Fund v. Va. State Lottery Dep't*, 20 F.3d 589, 591 (4th Cir. 1994) (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974)). When the plaintiff's request for injunctive relief is barred by the AIA, the court lacks subject matter jurisdiction.[13] *See Pagonis v. United States*, 575 F.3d 809, 815 (8th Cir. 2009) (noting that the "constitutional nature of a claim does not allow a

---

[13]     While Macort did not raise the TIA or AIA in her Motion to Dismiss, "[f]ederal courts have an independent duty to determine subject matter jurisdiction." *City of Kansas City, Mo. v. Yarco Co.*, 625 F.3d 1038, 1040 (8th Cir. 2010).

taxpayer to avoid the jurisdictional bar of the" AIA); *Lilienthal v. I.R.S.*, 960 F.2d 1053, 1992 WL 77273, at *1 (8th Cir. 1992) (per curiam) (concluding that district court properly dismissed action for lack of subject matter jurisdiction because request for injunctive relief was barred by the AIA).

To the extent Smith seeks an injunction as to Macort preventing the withholding of state taxes from his wages or the levying of his wages for purposes of collecting state taxes, his claims are barred by the TIA. 28 U.S.C. § 1341; *see Int'l Lotto Fund*, 20 F.3d at 593 (concluding that plaintiff's request for an injunction against withholding of state taxes was barred by the TIA); *Bisciglia*, 370 F. Supp. 2d at 878; *Kraemer*, 2002 WL 31116645, at *2, 4. Likewise, to the extent Smith seeks an injunction as to Macort preventing the withholding of federal taxes from his wages or the levying of wages for purposes of collecting federal taxes, his claims are barred by the AIA.[14] *United States v. Am. Friends Serv. Comm.*, 419 U.S. 7, 10 (1974) ("The District Court's injunction against the collection of the tax by withholding enjoins the collection of the tax, and is therefore contrary to the express language of the Anti-Injunction Act."); *Lilienthal*, 1992 WL 77273, at *1 (concluding that plaintiffs' request for injunctive relief based on claim that IRS lacked ability "to levy on their property" was barred by the AIA); *Philippi v. Brellenthin*, No. Civ. 11-2389 (JRT/LIB), 2012 WL 947016, at *3 (D. Minn. Jan. 26, 2012) (Brisbois, Mag. J.) (concluding that plaintiff's request for injunctive relief that would prevent the

---

[14]    Conway and Paule have not been served with the Complaint, and dismissal may be warranted under Federal Rule of Civil Procedure 4(m). But, more importantly, the Court lacks subject matter jurisdiction over Smith's claims as to Conway and Paule under the AIA. As to Paule, Smith seeks "[i]njunctive [r]elief from" from the federal levy, and as to both Conway and Paule, Smith seeks an order requiring them to "cease and desist all debt collection activities." (Compl. at 7). Based on the allegations in the Complaint, the "collection activities" are the federal withholding and levy of Smith's wages. Thus, for the same reasons discussed above with respect to Macort, Smith's claims as to Conway and Paule are barred by the AIA and must be dismissed.

IRS from collecting taxes by levy was barred by the AIA), *adopted*, 2012 WL 947083 (Feb. 23, 2012) (Tunheim, J.).[15]

In addition to the above requests for injunctive relief, Smith seeks other relief with respect to Macort. Specifically, Smith seeks an order requiring Macort to "audit the payroll accounts of . . . Smith to certify and return all the wages unlawfully withheld, levied and garnished for the" IRS and MDR. (Compl. at 7). In seeking this relief, it is not clear whether Smith intends to assert a claim for damages or whether he intends to assert a replevin claim against Macort. Regardless of the precise nature of his request, however, the Court concludes that Macort is protected from liability under federal and state law and that, to the extent Macort is not statutorily protected from liability, Smith has failed to plausibly plead any claim for relief.

Federal law shields Macort from liability for her conduct in connection with the withholding of federal taxes and her actions in complying with a federal levy on Smith's wages. An employer is "liable for the payment of the tax required to be deducted and withheld" under the Internal Revenue Code, "**and shall not be liable to any person for the amount of any such**

---

[15]    The Court notes that the AIA is subject to certain limited exceptions. "The two possibly relevant exceptions to this case are an action to enjoin a wrongful levy and a judicially created exception." *Phillipi*, 2012 WL 947016, at *3 n.2. "First, a suit may be brought under § 7426(a)(1) to enjoin a wrongful levy; however, the exception applies only to actions brought by **nontaxpayers** to enjoin a sale or levy where their interests are superior to those of the sovereign." *Id.* (citing 26 U.S.C. § 7426(b)(1)). Second, a plaintiff may avoid the jurisdictional bar imposed by the AIA when he can "demonstrate[] that '(1) under no circumstances could the government ultimately prevail on its tax claim and (2) equity jurisdiction otherwise exists; either ground being conclusive.'" *Id.* (citing *Mathes v. United States*, 901 F.2d 1031, 1033 (11th Cir. 1990)). Like the plaintiff in *Phillipi*, Smith "has not argued, nor does it appear to the Court, that this is one of those rare and compelling circumstances barring application of the Anti–Injunction Act." *Id.* (internal quotation marks omitted).

Similarly, Smith has not plausibly alleged a basis for release of the levy. *See McConnell v. U.S. Gov't*, Civil No. 09-1273 (JRT/SRN), 2010 WL 3548480, at *3 (D. Minn. Apr. 19, 2010) (Nelson, Mag. J.), *adopted*, 2010 WL 3548475 (Sept. 7, 2010) (Tunheim, J.). "Rather, [Smith] appears to challenge the constitutionality of the federal income tax system, which, despite the sincerity of [his] beliefs, is not at issue here." *Id.*

**payment**." 26 U.S.C. § 3403 (emphasis added); *see also Richcreek v. Grecu*, 612 F. Supp. 111, 114–15 (S.D. Ind. 1985) (relying on § 3403's liability shield when granting defendant payroll employees' motion to dismiss where plaintiff sued them for "withholding federal income tax" and noting that defendants' actions "in withholding the plaintiff's federal taxes were lawful and in accordance with congressional mandate"); *Peth v. Breitzmann*, 611 F. Supp. 50, 54 (E.D. Wis. 1985) ("[T]he only reason the private defendants are being sued is because they withheld wages from plaintiff for taxation purposes. The law requires them to do this, and they are not liable to plaintiff for the amounts withheld. 26 U.S.C. § 3403. Plaintiff has wholly failed to state a claim for relief against the private defendants . . . .").

Likewise, Macort is relieved from liability for honoring the federal levy of Smith's wages.

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

26 U.S.C. § 6332(e); *see also Phillipi*, 2012 WL 947016, at *5 (noting that § 6332 establishes both "the obligation to comply with a levy" and "a shield of immunity for anyone who does so"); *Richcreek*, 612 F. Supp. at 114–15 (concluding that under § 6332 payroll employee defendants were "not liable to plaintiff for honoring the IRS Notice of Levy").

In addition, state law shields Macort from liability for claims arising out of her compliance with a levy by the MDR. Specifically, Minnesota law provides:

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the commissioner, surrenders the property or rights to property (or who pays a liability under section 270C.70, subdivision 1) shall be discharged from any

> obligation or liability to the person liable for the payment or collection of the delinquent tax with respect to the property or rights to property so surrendered or paid.

Minn. Stat. § 270C.67, subdiv. 13. Macort is therefore "discharged from any obligation or liability" to Smith for claims based on her compliance with the state levy. *Id.*; *see also Bisciglia*, 370 F. Supp. 2d at 878 (applying same statutory language, which was previously codified at Minnesota Statute § 270.70, subdivision 15, and concluding that defendants were "shielded from liability for their actions in complying with the [MDR's] levy").

Finally, to the extent not barred by any of the above provisions of law, Smiths claims are specious. In discussing Smith's claims, "the Court is mindful that" his "arguments are reminiscent of tax-protester rhetoric that has been universally rejected by [the tax court] and other courts, and will not painstakingly address each of [Smith's] claims with somber reasoning and copious citation of precedent [because] to do so might suggest that these arguments have some colorable merit." *Philippi*, 2012 WL 947016, at *2 (alteration in original) (citations and internal quotation marks omitted) (quoting *Crain v. Comm'r*, 737 F.2d 1417, 1417 (5th Cir. 1984); *Williams v. Comm'r*, 114 T.C. 136, 138–39 (2000)).

Given the litany of legal principles Smith cites and the cursory nature in which he refers to those legal principles, it is difficult to determine the nature and scope of the legal rights and claims at issue in this case. *Cf. Sellors*, 2014 WL 1607747, at *11 (noting that "many of the 'legal theories'" in the plaintiff's complaint were "unclear, to say the least" and failed to "meet the Rule 8 standard"). Smith appears to contend that Macort's and/or the other defendants' actions violate: (1) various provisions of the federal constitution; (2) the Declaration of Independence; (3) his "God-given" rights; (4) various provisions of the Minnesota constitution; (5) various federal statutes; (6) principles of "common law"; and (7) perhaps, principles of

admiralty law.[16] *See generally* (Compl.); (Smith Mem. of Law). But Smith's position that the defendants' conduct violates all of the above is premised on various arguments and legal theories that federal courts have addressed *ad nausuem* and resoundingly rejected. *Compare*, *e.g.*, (Compl.) (asserting that Smith's wages are not subject to income tax laws for various reasons, including lack of "jurisdiction" and "consent," and that any change to Smith's withholding status was improper because the IRS's 1040 form does not have a valid OMB number) *with Dodge v. Comm'r*, 317 F. App'x 581, 582 (8th Cir. 2009) (per curiam) ("[W]e reject as frivolous Dodge's effort to avoid tax liability by claiming that the Form 1040 does not comply with the Paperwork Reduction Act."); *Buser v. United States*, 85 Fed. Cl. 248, 262–63 (2009) (noting that "courts have previously rejected arguments similar to plaintiff's concerning IRS Form 1040 and valid OMB control numbers" and collecting cases); *Banat v. Comm'r*, 80 F. App'x 705, 707 (2nd Cir. 2003) (affirming imposition of sanctions when plaintiff made the frivolous argument that payment of income tax was voluntary); *Crain*, 737 F.2d at 1417–18 (noting that the "constitutionality of our income tax system—including the role played within that system by the Internal Revenue Service and the Tax Court—has long been established" and rejecting as

---

[16]    One particular claim that Smith raises is a breach of contract claim against Macort. *See* (Compl. at 6, 10). Specifically, he alleges that Macort breached his contract with Iron Mountain by changing his withholding status. (*Id.*). For reasons discussed above, federal law bars this claim to the extent it is based on federal withholding. To the extent this claim is based on state withholding, the Court can discern no plausible claim for breach of contract against Macort based on the allegations here—that is, Smith's conclusory assertion that Macort's conduct was a breach of contract and factual allegations that Macort engaged in conduct that merely complied with state law. Minn. Stat. § 290.92, subdiv. 2a ("Every employer making payment of wages shall deduct and withhold upon such wages a tax as provided in this section.").

Smith also asserts that Defendants' conduct amounts to "mail fraud." (Compl. at 4). As a general rule, however, "[p]rivate individuals do not have the right to prosecute defendants for alleged violations of federal criminal statutes." *Sellors*, 2014 WL 1607747, at *11. Furthermore, the Eighth Circuit stated in *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999), that "[n]either the mail fraud statute nor its legislative history provides for any remedy other than criminal sanctions" and held that "Congress did not intend to create a private right of action in enacting" the mail fraud statute.

"spurious" plaintiff's argument that the IRS did not have "jurisdiction" to "levy taxes on his income").[17] The Court further notes that Smith's conclusory allegations that federal and state levies were imposed without due process of law are insufficient to state a plausible claim for relief. Indeed, the facts alleged by Smith show that he was provided with notices regarding the federal and state levies, but refused to accept or open these mailings, apparently based on his mistaken belief that refusing "for cause" and "without dishonor" documents from the IRS or the MDR has some sort of legal effect. *See* (Compl. at 5–6); *see Bisciglia*, 370 F. Supp. 2d at 875 n.1.

For the reasons stated above, the Court concludes that, to the extent Smith seeks injunctive relief, his claims against Macort must be dismissed for lack of subject matter jurisdiction and that his claims must otherwise be dismissed for failure to state a claim upon

---

[17]      *See also Fontaine v. U.S. Gov't*, No. Civ. 04-30080-MAP, 2004 WL 2284499, at *3 (D. Mass. Aug. 22, 2004) ("Charging that the U.S. Defendants fraudulently altered his sovereign status, Plaintiff believes that he is not required to pay income tax because he is 'a sovereign citizen, not a corporate entity, engaged in no taxable activity, to the best of his knowledge.' Plaintiff's argument is ludicrous."); *Blackstone v. I.R.S.*, No. Civ. CCB-98-2648, 1998 WL 796738, at *1 (D. Md. Sept. 30, 1998) ("The Blackstones apparently contend that the federal government lacks jurisdiction over them since they are 'sovereign citizens of the State of Maryland' and that neither the federal government nor Maryland may impose taxes on any income derived from plaintiffs' labor. It is well-settled, however, that the federal government possesses the constitutional authority to levy income taxes on the wages earned by individuals. *See, e.g., United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir. 1993) (per curiam); *Grimes v. Comm'r of Internal Revenue*, 806 F.2d 1451, 1453 (9th Cir. 1986); *United States v. Stillhammer*, 706 F.2d 1072, 1077–78 (10th Cir. 1983). States, likewise, may impose income taxes on individuals 'so long as the tax imposed is upon property within the state or on privileges enjoyed there, and is not so palpably arbitrary or unreasonable as to infringe the Fourteenth Amendment.' *Lawrence v. State Tax Comm'n*, 286 U.S. 276, 279–80 (1932); *see also Becker v. Levitt*, 489 F.2d 1087, 1090–91 (2d Cir. 1973) (discussing levels of scrutiny applied to state taxing statutes). In light of this long line of uncontradicted precedent, the Blackstones' constitutional arguments must be rejected.").

which relief may be granted. The Court therefore recommends that Macort's Motion to Dismiss be granted.[18]

### c.      Conclusion Regarding Motions to Dismiss

In sum, the Court recommends granting the Motions to Dismiss. In addition, and for the same reasons, the Court concludes that it lacks subject matter jurisdiction over Smith's claims against Paule and Conway, and that any claim against the John Doe and Mary Rowe defendants would likewise be beyond this Court's subject matter jurisdiction, or would be subject to dismissal for failure to state a claim upon which relief may be granted. In light of the above, the Court recommends dismissal of this action with prejudice.[19]

### B.      Smith's Motions

Smith also filed several motions. In essence, Smith's Motions seek default judgments against Bauerly and Macort, and, to varying degrees, repeat the requests for relief articulated in the Complaint. *See generally* (Smith's Mots.). Smith seeks default as to Bauerly and Macort based on his puzzling belief they cannot properly plead or otherwise defend against this action if represented by counsel. *See, e.g.*, (Mot. & Support for Default J. & Replevin at 1–2); (Mot. & Order for Default J. & Replevin at 1, 3); (Mem. of Law) [Doc. No. 55 at 33]. This argument is ridiculous, and there is no basis upon which to enter default judgment against Bauerly or Macort. Moreover, to the extent Smith's Motions repeat the requests for relief Smith makes in his

---

[18]      For the reasons discussed herein, the Court also recommends dismissal of any claims Smith intends to assert against defendants John Doe and Mary Rowe. That is, any claim against these defendants, identified by Smith using placeholder names, would be barred or would fall short of the plausibility standard for the same reasons discussed above with respect to Smith's claims against the named defendants.

[19]      The Court acknowledges that dismissal for failure to state a claim is typically without prejudice. Due to the frivolous nature of Smith's claims, however, the Court concludes that no amount of repleading will cure the deficiencies in Smith's Complaint and therefore recommends dismissal with prejudice.

Complaint, the motions must be denied for the reasons discussed above.[20] The Court therefore recommends that Smith's Motions be denied.

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant Cynthia Bauerly's Motion to Dismiss [Doc. No. 7] be **GRANTED**;

2.    Defendant Janis Macort's Motion to Dismiss [Doc. No. 33] be **GRANTED**;

3.    Plaintiff Elwyn Lee Smith's ("Smith") Motion and Order for Default Judgment and Replevin [Doc. No. 20] be **DENIED**;

4.    Smith's Private Letter Rogatory and Motion-Order [Doc. No. 30] be **DENIED;**

5.    Smith's Motion and Memorandum of Law in Support of Default Judgment and Order Relief [Doc. No. 39] be **DENIED**;

6.    Smith's Motion and Support for Default Judgment and Replevin [Doc. No. 48] be **DENIED**; and

7.    This action be **DISMISSED with prejudice**.

Dated: July 29, 2016

 _s/Steven E. Rau_____
STEVEN E. RAU
United States Magistrate Judge

---

[20]    The Court has reviewed the filings made in conjunction with Smith's Motions. To the extent Smith makes any arguments therein that are responsive to the Motions to Dismiss and seeks to add additional claims or defendants to this case, his arguments are unavailing for the reasons already discussed in this Report and Recommendation.

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.